THE HOME INSURANCE COMPANY, Appellant, *v.* W. STEBBINS SMITH and EDMOND HUERSTEL, Respondents.

*Taking of lands by eminent domain — effect of, upon a mortgage covering such lands and other property — right of the owners of the equity of redemption to the award — they may charge it with the value of the services rendered by their attorneys in an attempt to increase it — rights of the mortgagee and a purchaser under a foreclosure sale, in the award.*

In February, 1873, J. B. Dunham died, seized of certain premises in the city of New York, which he devised to his widow, his two sons and a grandchild, as tenants in common. A portion of the premises were subject to a mortgage given by the testator in 1866. November 16, 1880, an order was made confirming proceedings instituted in 1877 by the city for opening a street, in which a por-

tion of the mortgaged premises were taken and an award made therefor to the testator, then deceased. This order was affirmed by the Court of Appeals on October 18, 1881. In August, 1880, the mortgaged premises were set-off to the two sons in an action brought to secure a partition of their father's estate. In February, 1879, the two sons had entered into an agreement with the defendants, attorneys-at-law, by which they agreed to pay them thirty per cent of the amount of the decrease of assessments, or increase of awards, which they might be able to procure in the proceedings for opening the street.

On April 9, 1881, the plaintiff commenced an action to foreclose the mortgage which had been assigned to it on July 3, 1879. On June 20, 1881, the premises described in the mortgage were sold under the foreclosure to the widow, subject to the proceedings for opening the streets, for more than enough to pay the amount due upon the mortgage, and on December 27, 1881, the referee's deed therefor was delivered to her. On that day she assigned to the plaintiff, for a valuable consideration, the award for damages made by the commissioners.

In an action brought by the plaintiff, the insurance company, to compel the payment to itself of the full amount of the award:

*Held,* that upon the entry of the order of November 16, 1880, the city acquired title to the land taken, and the two sons acquired title to the amount of the award, subject only to the right of the mortgagee to resort thereto for the pay ment of any deficiency that might arise upon the sale of the residue of the mortgaged premises.

That the respondents, the attorneys, acquired a lien upon the award by virtue of their agreement with the sons, and that the court properly directed the payment of the amount due to them therefrom.

That the purchaser upon the foreclosure sale acquired no title to the award nor to any portion thereof.

Appeal from an order directing the payment of the sum of $1,536.26, with interest from the 14th day of July, 1882, to the respondent Huerstel, out of an award, deposited by order of the court to the credit of this action, made in proceedings taken for opening and widening Morris avenue.

The action was brought to recover the amount of an award for land taken by the city in opening a street. The action was severed and directed to proceed against the respondents herein, the relief sought by the complaint being granted as to the mayor, aldermen and commonalty of the city of New York and the other defendants. It appeared that on the 21st of May, 1866, one John B. Dunham purchased certain lands and premises in the city of New York, and to secure a part of the purchase-price of said premises, on the same day made, delivered and executed to one Mortimer a mortgage thereon.

On February 9, 1873, John B. Dunham died, leaving a last

will and testament, by which he appointed his wife Mary Ann Dunham, and his son David H. Dunham, to be executors thereof, and devised his residuary estate, including the said lots above mentioned, to his wife Mary Ann Dunham, his sons John B. Dunham and David H. Dunham, and his grandchild Annie P. Dunham, as tenants in common.

On January 9, 1877, the department of public parks, on behalf of the mayor, etc., of the city of New York, instituted proceedings relative to the opening of One Hundred and Thirty-eighth street and other streets, in which the sum of $14,314 was awarded to John B. Dunham, as the owner of the portion of the mortgaged premises taken. An order confirming the proceedings was made November 16, 1880.

On or about February 8, 1879, David H. Dunham and John B. Dunham made an agreement in writing with W. Stebbins Smith and Edmond Huerstel, attorneys and counselors-at-law, the defendants herein, by which they agreed to give to said Smith and Huerstel, as their attorneys, thirty per cent of the amount of the decrease of assessments or increase of awards, in the proceeding for opening and widening Morris avenue, above mentioned, from the amount of assessments or awards established in the first instance by the commissioners, in consideration of services to be rendered by said Smith and Huerstel, as their attorneys in procuring such increase of award and decrease of assessment.

On the 3d July, 1879, the bond and mortgage of John B. Dunham to William Y. Mortimer was duly assigned for a good and valuable consideration to the Home Insurance Company.

On the 22d November, 1879, the devisees under the will of John B. Dunham began an action to partition the lands held in common by them, and on the 7th of August, 1880 judgment of partition was entered by which the mortgaged premises were set apart in severally to David H. Dunham and John B. Dunham, as tenants in common, subject to the lien of the mortgage then held by the Home Insurance Company.

On April 9, 1881, the Home Insurance Company commenced an action to foreclose the mortgage made by John B. Dunham to Mortimer, which had been assigned to the company on July 3, 1879.

On the 20th June, 1881, the mortgaged premises were sold to

Mary Ann Dunham for $20,100, subject to the proceedings theretofore had or then pending for opening and widening Morris avenue, or to any charge or incumbrance thereon arising out of such proceedings.

The Home Insurance Company had no notice of the agreement between David H. Dunham and John B. Dunham and Smith and Huerstel prior to the commencement of the foreclosure above mentioned.

On the 27th day of December, 1881, said referee delivered to said purchaser a deed of the said premises, and on the same day she executed an instrument purporting to assign to the plaintiff, for a good and valuable consideration, the award for damages.

Judgment having been entered in this action in favor of the defendants, an order was subsequently made directing the payment of the amount due to them from the award, deposited to the credit of this action as above stated, and from that order this appeal was taken.

*William Allen Butler*, for the appellant.

*Abram Kling*, for the respondents.

Daniels, J.:

The property out of which the money in controversy has arisen was in his lifetime owned by John B. Dunham. In May, 1866, he executed a mortgage upon it to secure a part of its purchase-price. In February, 1873, he died, and by his will devised this property to his widow, his two sons John B. and David H. Dunham, and his grandchild Annie P. Dunham, as tenants in common. And by a proceeding in partition which resulted in a judgment in August, 1880, the land described in the mortgage was set off to the two sons David H. and John B. Dunham. Before this partition was made, and in January, 1877, the department of public parks on behalf of the mayor of the city of New York instituted proceedings for opening and widening Morris avenue and appropriating to that object a part of the property included in the mortgage. These proceedings on the 16th day of November, 1880, and after the entry of the judgment setting off this property to David H. and John B. Dunham, were confirmed by the Special Term of this court and they included an award amounting to the sum of $14,314 for

so much of the property as was required for the purposes of this avenue. As David H. and John B. Dunham had prior to that time acquired the title through the judgment in partition to the property, it followed that this award became payable to them, subject only to the payment of the mortgage still remaining a lien upon the residue of the property. And under the well settled principles of equity, the latter was required to be first sold to realize and pay the mortgage indebtedness before this fund could properly be resorted to for that purpose. The principle applicable would seem to be the same as that which governs the partial alienation of property mortgaged, and that is, that the party holding the mortgage shall first resort to the portion of the property still vested in the mortgagor, his heirs or devisees before that which may have been alienated can be sold or appropriated for the satisfaction of the mortgage debt. For in no other practicable manner could the amount be certainly ascertained which should be paid out of the fund upon the debt. By the confirmation of the award included in the commissioners' report, the part of the property taken for opening and widening the avenue became vested in the city. (*Matter of Opening Eleventh Avenue*, 81 N. Y., 437, 453). And this award was substituted for it. The fact that an appeal was taken from the order of confirmation and prosecuted until a final decision was obtained upon it, on the 18th day of October, 1881, in the Court of Appeals, in no manner changed the effect of the confirmatory order. For by the final decision made that order was affirmed, and it consequently was left in full force and effect as it had been made by the Special Term in November, 1880. These proceedings therefore had as completely changed the title to so much of the land as was required for the avenue, as a voluntary conveyance of it, executed by David H. and John B. Dunham to the city would have done. And as they were at the time of the entry of the confirmatory order, the owners of the property, it followed that the award was payable to them, subject only to the previous satisfaction of the mortgage. To that extent and to that extent alone the lien of the mortgage was removed from the land and attached to the award made payable because of its appropriation. And for that reason the assignment of the mortgage by the mortgagee to the plaintiff, and its subsequent foreclosure and the sale had under it, entitled the purchaser to no more

of the property than that remaining after excluding what was required for the street. That was all the land that the mortgage continued an encumbrance upon, after the residue had been devoted to a public purpose, and in case that failed to produce the mortgage debt the plaintiff, in that event, was entitled to resort to the award to make up the deficiency, but it had no other right or authority over it.

The result of these considerations is that the purchaser, under the foreclosure judgment, obtained no title whatever to the award made for the land taken for the avenue; for having been acquired by means of the proceedings taken by the city, it was no longer liable to be sold under the mortgage.

The lien upon it was divested and transferred to so much only of the award as might be required to extinguish it; and accordingly the assignment of it by the purchaser under the judgment gave the plaintiff no legal right to the money in controversy. The circumstance that the title conveyed by means of a foreclosure is that encumbered by the mortgage at the time when it was given, will not change the rights of the parties in this respect. For the part of the land itself for which the award was made, was as completely excluded by the proceedings from the mortgage as though it had never been encumbered by it.

The rights of the parties, after that, were confined to the fund and not to the property out of which it originated. And the extent of that to which the plaintiff succeeded as the assignee of the mortgage was limited to the amount of money required for the payment of the mortgage debt after the sale of the remaining portion of the property.

The right to the balance of the award, vested in the person owning the equity of redemption. By virtue of their title, this money belonged to them, at least so much of it as would remain after the payment of the mortgage debt. That followed necessarily from the fact that they owned the property at the time when it was appropriated by virtue of the order confirming the report, subject only to the payment of this mortgage.

After the proceedings were instituted for opening and widening the avenue and in February, 1879, while they were pending, David H. and John B. Dunham entered into an agreement with the

respondents, by which they agreed to pay them thirty per cent of the amount of the decrease of assessments or increase of awards in the proceeding for opening and widening the avenue, for the services to be rendered by them in procuring such increase of award and decrease of assessment. Under this employment the respondents devoted their services to the reduction of the assessments and the increase of the awards, and in that manner they obtained a material reduction of assessment upon other lots owned by the Dunhams, and an increase in the amount of the awards themselves. These changes under the terms of the agreement entitled the respondents to the amount directed to be paid to them by the order from which the appeal has been taken. For nothing has been made to appear justifying a presumption that their claim to this payment was not a meritorious one or not fully justified by the circumstances found to have been proved. It is true that when the agreement itself was made the parties making it were only authorized to charge their half of the fund to be created by the award, but that circumstance in no manner affects the respondents' right to this compensation. For before the fund itself was created they acquired the remaining interest in the property, for the taking of which it was awarded, and thereby subjected it wholly to the terms of their agreement. They became the sole owners of the fund, subject only to the lien of the mortgage upon it for the payment of the amount remaining after the sale of the residue of the property included in the mortgage.

And by virtue of that title they were legally authorized to subject it to the charge created upon it by the agreement which they made. So much of it certainly as is required to satisfy the claims of the respondents under the terms of this agreement was not required for the satisfaction of the mortgage, and from the facts as they have been made to appear, and the legal principles applicable to them, the order from which the appeal has been taken appears to have been clearly warranted.

It should therefore be affirmed, with the usual costs and disbursements.

DAVIS, P. J., and BRADY, J., concurred.

Order affirmed, with ten dollars costs and disbursements.